USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/16/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HALO LIFESTYLE LLC,

                              Plaintiff,

-v-

HALO FARM, INC.,

                              Defendant.

18 Civ. 9459 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

    Plaintiff Halo Lifestyle LLC ("Halo Lifestyle"), a New York limited liability company, brings this action, seeking a declaratory judgment, pursuant to 28 U.S.C. §§ 2201(a) and 2202, that (1) its HALO SPORT Mark does not infringe or violate defendant's HALO FARM Marks and (2) it may continue to market and sell its products using the HALO SPORT Mark. In addition, Halo Lifestyle seeks an order "enjoining Defendant, its officers, owners, partners, employees, agents, parents, subsidiaries, attorneys, and anyone acting in concert or participation with any of them, from pursuing any claims against Plaintiff for infringement or violation of Defendant's HALO FARM Marks." Dkt. 18 ("AC") at 13. Defendant Halo Farm, Inc. ("Halo Farm"), a New Jersey corporation, moves to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). In the alternative, Halo Farm moves to strike Halo Lifestyle's request for injunctive relief as overly broad pursuant to Rule 12(f).

    For the reasons that follow, the Court grants the motion to dismiss.

## I. Background

### A. Facts[1]

#### 1. The Parties

Halo Lifestyle is a lifestyle and fitness company that manufactures sports drinks. AC ¶ 6. Halo Lifestyle launched its HALO SPORT drink, which Halo Lifestyle markets as a healthy alternative to competitors' sports drinks. *Id.* ¶ 8. Halo Lifestyle touts various allegedly healthful features of Halo Sport, including that it is, *inter alia*, certified organic, vegan, kosher, low-calorie, non-GMO, and has no artificial flavors, preservatives, or synthetic coloring. *Id.* ¶ 9.

Halo Farm operates three facilities in New Jersey, including a retail store and dairy in Lawrenceville, a shop in Princeton, and another in Hamilton Square. *Id.* ¶ 16. These locations sell dairy products, ice cream, pastries, dessert-related food items, and third-party branded coffee. *Id.* Halo Farm also sells its own brand of milk, juices, iced tea, lemonade, and ice cream. *Id.* ¶ 18. Halo Farm owns trademarks for Halo Farm and Halo Farm & Design ("HALO FARM Marks") for juices, ice cream, ice tea, milk, and related goods and services. *Id.* ¶ 21.

#### 2. Halo Lifestyle's Patent Applications

Halo Lifestyle has filed with the United States Patent and Trademark Office (the "USPTO") various trademark applications on an "intent to use" basis for its HALO SPORT mark and other planned variations of the term "HALO." *Id.* ¶ 14. Halo Lifestyle owns various trademark applications, including: HALO SPORT; YOU'RE YOUR HALO; GET HALO; GO HALO; HALO KIDS; HALO LIFE; HALO PRO; LIVE HALO; MY HALO; ONE HALO; OWN YOUR HALO; SWEAT.HALO.REPEAT.; THE HALO EFFECT; and WORK.HALO.REPEAT. (collectively, the "HALO LIFESTYLE Marks"). *Id.*

---

[1] The Court draws these facts principally from the Amended Complaint. Dkt. 18.

Halo Farm has filed 11 Notices of Opposition to Halo Lifestyle's trademark applications before the Trademark Trial and Appeal Board ("TTAB") of the USPTO. *Id.* ¶ 22; Dkt. 25 ("Pl. Mem.") at 13. In objecting to the registration of the Lifestyle Marks, Halo Farm claimed that the HALO LIFESTYLE Marks constitute an infringement on the HALO FARM Marks. *Id.* ¶ 23.

### 3. Halo Lifestyle's Sales

On October 15, 2018, Halo Lifestyle officially began selling the HALO SPORT beverage online. It has made sales in Arizona, California, Colorado, Connecticut, Florida, Georgia, Idaho, Illinois, Iowa, Kansas, Massachusetts, New Jersey, New York, North Carolina, Pennsylvania, Texas, and Virginia. *Id.* ¶ 12. Halo Lifestyle also sells its beverage, through distributors, to select fitness centers and retailers. *Id.* The HALO SPORT beverage is available at retail stores in the New York City and Miami metropolitan areas. *Id.*

### B. The Instant Action

#### 1. Overview

In this action, Halo Lifestyle seeks a declaratory judgment that its HALO SPORT mark does not infringe on Halo Farm's marks and that Halo Lifestyle may continue to sell its product under the HALO SPORT mark. *Id.* ¶¶ 25, 31. The effect of the declaratory judgment would be to enjoin "Defendant, its officers, owners, partners, employees, agents, parents, subsidiaries, attorneys, and anyone acting in concert or participation with any of them, from pursuing any claims against Plaintiff for infringement or violation of Defendant's HALO FARM Marks." *Id.* at 13.

As to why declaratory relief is warranted, Halo Lifestyle alleges that Halo Farm's "historic and current actions and allegations," including the notices of opposition it has filed, suggest that Halo Farm will bring a legal action against Halo Lifestyle for trademark infringement. *Id.* ¶ 24. Halo Lifestyle claims that there is a "real and present controversy

3

between the parties" on the issue of whether the HALO LIFESTYLE Marks infringe or violate the HALO FARM Marks. *Id.* ¶ 33.

As to why its HALO SPORT Mark is non-infringing, Halo Lifestyle claims that each corporation's marks feature unique and distinctive elements: The parties' marks are used on different products, the HALO LIFESTYLE Marks are highly stylized and present "a unique commercial impression," the products are sold through different chains of commerce, and the products are marketed to different consumer groups. *Id.* ¶ 27. As a result, Halo Lifestyle alleges, no confusion or conflict exists between the HALO FARM Marks and HALO LIFESTYLE Marks. *Id.* ¶ 31.

### 2. Procedural Background

On October 16, 2018, Halo Lifestyle filed its initial complaint.[2] Dkt. 1. On December 17, 2018, Halo Farm moved to dismiss for lack of subject matter jurisdiction. Dkt. 13.

On January 7, 2019, Halo Lifestyle filed the AC, which, as noted, seeks declaratory relief and injunctive relief. Dkt. 18. On January 28, 2019, Halo Farm moved to dismiss the AC for lack of subject matter jurisdiction and to strike as overbroad the AC's request for injunctive relief. Dkt. 19. Halo Lifestyle filed a supporting declaration by Matthew Bart, Dkt. 20, and a memorandum of law, Dkt. 21.

On February 19, 2019, Halo Lifestyle filed a memorandum of law in opposition, Dkt. 25, and supporting declarations by Jessica A. Cohen, Dkt. 26, Rob Soni, Dkt. 27 ("Soni Decl."), and Jonathan D. Reichman, Dkt. 28. On March 1, 2019, Halo Farm filed its reply, Dkt. 30 ("Def. Reply"), and a declaration by Kathleen Arnold, Dkt. 29.

---

[2] Halo Lifestyle later filed motions in the TTAB, seeking to suspend the Opposition Proceedings pending the outcome of this action. Dkt. 21 ("Def. Mem.") at 8.

4

## II. Subject Matter Jurisdiction

### A. Applicable Legal Standards

#### 1. 12(b)(1)

A claim is "properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "Pursuant to Rule 12(b)(1), dismissal for lack of subject matter jurisdiction is appropriate if the Court determines that it lacks the constitutional or statutory power to adjudicate the case." *Lleshi v. Kerry*, 127 F. Supp. 3d 196, 199 (S.D.N.Y. 2015); *see Makarova*, 201 F.3d at 113. "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that jurisdiction exists." *Giammatteo v. Newton*, 452 F.App'x 24, 27 (2d Cir. 2011) (citing *Makarova*, 201 F.3d at 113). In resolving a motion to dismiss for lack of subject matter jurisdiction, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff," *Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (internal quotation omitted), but "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it," *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998); *see also APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003); *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). On such a motion, a court may consider evidence outside the pleadings, such as affidavits and exhibits. *Makarova*, 201 F.3d at 113.

#### 2. Declaratory Judgment Act

The Declaratory Judgment Act ("DJA") provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The

Supreme Court has described a "case of actual controversy" sufficient for a court to exercise jurisdiction over a declaratory judgment action as "a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2009). In determining whether a controversy is justiciable, courts consider the totality of the circumstances. *Id.* The "threat of future litigation . . . [is] relevant in determining whether an actual controversy exists." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 96 (2d Cir. 2011).

**B.     Discussion**

In moving to dismiss the AC for lack of subject matter jurisdiction, Halo Farm argues that Halo Lifestyle has not pled facts to make out an actual case or controversy. Def. Mem. at 8. In the alternative, Halo Farm asks the Court to exercise its discretion to decline jurisdiction. *Id.* at 11. Finally, assuming the case does proceed in this Court, Halo Farm moves to strike, as overbroad, Halo Lifestyle's request for injunctive relief in the form of an order "enjoining Defendant, its officers, owners, partners, employees, agents, parents, subsidiaries, attorneys, and anyone acting in concert or participation with any of them, from pursuing any claims against Plaintiff for infringement or violation of Defendant's HALO FARM Marks." *Id.* at 15.

The Court need address here only the first argument—that subject matter jurisdiction is lacking.

In denying that there is a case or controversy, Halo Farm argues that it has not "sought or threatened to seek to prohibit plaintiff's use of its mark." Def. Mem. at 8. It notes that it "has not complained about or threatened to sue Lifestyle for use of the HALO SPORT mark or any of the other Lifestyle Marks." *Id.* at 12. Halo Lifestyle counters by noting the notices of opposition that Halo Farm filed before the TTAB, in which Halo Farm claimed that registration and use of Halo Lifestyle's trademarks at issue could cause consumer confusion. Pl. Mem. at 13–15. Halo

Lifestyle also claims that Halo Farm has orally threatened to sue Halo Lifestyle for infringement and that Halo Farm has sued other companies. *Id.* at 13.[3]

The Court holds, with Halo Farm, that a substantial controversy of sufficient immediacy and reality does not exist for there to be an actual case or controversy under the Declaratory Judgment Act. A notice of opposition with the TTAB alone does not make out an actual case or controversy or demonstrate that the party who filed such a notice seeks to prohibit the use of the mark in question. On the contrary, as the Second Circuit held over half a century ago, filing an opposition to a trademark registration "is not by itself a charge or warning of a future charge of infringement." *Topp-Cola Co. v. Coca-Cola Co.*, 314 F.2d 124, 126 (2d Cir. 1963). Courts have consistently taken as "well-settled within this Circuit that the existence of a dispute before the TTAB over the registration of a party's mark, on its own, 'is insufficient to establish sufficient adversity for the purposes of a declaratory judgment action.'" *1-800-Flowers.com, Inc. v. Edible Arrangements, LLC*, 905 F. Supp. 2d 451, 454 (E.D.N.Y. 2012) (citing *Bruce Winston Gem Corp. v. Harry Winston, Inc.*, No. 09 Civ. 7352 (JGK), 2010 WL 3629592, at *5 (S.D.N.Y. Sept. 16, 2010)); *see also Am. Pioneer Tours, Inc. v. Suntrek Tours*, Ltd., 1998 WL 60944, at *3 (S.D.N.Y. Feb. 13, 1998) (dismissing case for lack of subject matter jurisdiction where only evidence of adversity between parties was defendants' opposition to plaintiff's trademark application). Accordingly, absent any allegation that Halo Farm has done more—to wit, that it has threatened Halo Lifestyle with litigation, sent a cease-and-desist letter to Halo Lifestyle, or taken or made statements of a similar character—Halo Lifestyle's claim of a justiciable controversy would fall short.

---

[3] Halo Lifestyle's AC does not allege any such threat. The basis that Halo Lifestyle cites for that allegation is the declaration of Rob Soni, which Halo Lifestyle submitted along with its brief in opposition to the motion to dismiss. Dkt. 27.

Halo Lifestyle's AC does not contain any such allegations. It is silent as to them. Instead, in response to the motion to dismiss, Halo Farm states in its memorandum of law that Kathleen Arnold, Halo Farm's president, implicitly "ma[de] clear . . . that [she] intended to pursue Halo Lifestyle in court." Pl. Mem. at 7. To support this proposition, Halo Lifestyle relies on a declaration from Rob Soni, one of Halo Lifestyle's founders, submitted in connection with Halo Farm's opposition brief. Soni there attests to the fact that he emailed Arnold on July 5, 2017 "to discuss potential coexistence arrangements regarding the parties' use and registration of their respective trademarks." Soni Decl. ¶ 3. He claims that he sent a subsequent email on July 24, 2017 to which Arnold replied on July 27, 2017. *Id.* ¶ 4. On August 17, 2017, Soni then spoke by telephone with Arnold who, Soni states, was not receptive to a proposal that the two companies "develop a coexistence relationship regarding their trademarks." *Id.* ¶ 5. Soni further states that, in that conversation, Arnold told him that Halo Lifestyles' proposed use of the marks "trespasses [Halo Farm's] brand" and that she "describe[d] Halo Farm's enforcement efforts against" another company with similar marks to those of Halo Farm. *Id.* ¶ 6.

Such threadbare factual allegations fall short of supporting Halo Lifestyle's claim of an actual case or controversy. They do not substantiate Halo Lifestyle's claim that Arnold has "ma[de] clear" her company's intention to pursue litigation against Halo Lifestyle. Soni's declaration does not quote Arnold as saying that. And while Soni's declaration states that Arnold referred to Halo Farm's "enforcement efforts" towards another company, the declaration is conspicuously silent about that episode. The declaration does not identify that company. It does not state what these "enforcement efforts" consisted of. It does not even directly quote Arnold as using the term "enforcement efforts." And it does not reflect any follow-on research by Halo Lifestyle to uncover what Halo Lifestyle's prior enforcement efforts were or to what

8

company they were addressed, despite the fact that, if such a company indeed had similar marks to those of Halo Farm, *see* Soni Decl. ¶ 6, Halo Lifestyle presumably could readily identify that company.

Under these circumstances, Halo Lifestyle's showing falls short of what the case law requires for there to be an actual case or controversy. For example, in *1-800-Flowers.com, supra*, the district court held that defense counsel's statements to plaintiff's counsel "that defendant objected to plaintiff's use of its mark" and wanted plaintiff to abandon its registration effort were insufficient to create a case or controversy. 905 F. Supp. 2d at 458. The statements by Arnold here, as synopsized by Soni, are not materially different. And although an oral threat has been held to give rise to a case or controversy, the case so holding on which Halo Lifestyle relies involved an explicit reference to a potential infringement action. *See Telebrands Corp. v. Exceptional Prods. Inc.*, No. 11 Civ. 2252, 2011 WL 6029402, at *1 (D.N.J. Dec. 5, 2011) (finding actual case or controversy where defendant's president called plaintiff's founder and stated that it "had a number of causes of action" against plaintiff). No comparable oral threat of litigation is claimed here. Nor does Halo Lifestyle allege a written communication along the same lines, such as a cease-and-desist letter.

Halo Lifestyle separately argues that a case or controversy exists because Halo Farm, in its notices of opposition, has challenged both the registration and the use of the HALO Marks. Pl. Mem. at 13–15. These notices, Halo Lifestyle contends, in which Halo Farm's objections to Halo Lifestyle's sales practices involving its marks, "reflect an infringement dispute over Halo Lifestyle's *use* of its HALO SPORT mark." Pl. Mem. at 16.

This argument, too, is unavailing. That Halo Farm's advocacy before the TTAB on the subject of Halo Lifestyles' marks offered context—as to the use of those marks—is not

tantamount to a threat of litigation and is not otherwise a badge of such a case or controversy. Courts in this District instead have found subject matter jurisdiction where a TTAB opposition includes objections concerning the likelihood of confusion *and* the party opposing registration also sent cease-and-desist letters to its adversary. These cases have not found jurisdiction based on the opposition notices alone. *See, e.g., Am. Time Exchange, LLC v. Tissot SA*, No. 17 Civ. 4737 (VM), 2017 WL 4712634 (S.D.N.Y. Sept. 17, 2017), at *2 (finding that "allegations contained in Tissot's TTAB Opposition and the existence of cease-and-desist letters, amount to a constructive accusation that American Exchange is infringing Tissot's trademarks"); *Sasson v. Hachette Filipacchi Presse*, No. 15 Civ. 00194 (VM) (SN), 2016 WL 1599492, at *3 (S.D.N.Y. Apr. 20, 2016) (finding that a cease-and-desist letter, settlement negotiations between the parties to resolve their disputes, and a TTAB opposition established a substantial controversy); *Gelmart Industries, Inc. v. Eveready Battery Co., Inc.*, 120 F. Supp. 3d 327, 332 (S.D.N.Y. 2014) (finding that defendant had accused plaintiff of trademark infringement through its cease-and-desist letter and its notice of opposition, supporting subject matter jurisdiction). Here, in contrast, there are no additional factors beyond the fact of Halo Farm's opposition notices before the TTAB.

Halo Lifestyle does not marshal any apposite authority finding such conduct sufficient. Halo Lifestyle cites *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1246–47 (10th Cir. 2008), but this reliance is misplaced. The Tenth Circuit there, in finding subject matter jurisdiction, noted "five separate TTAB oppositions combined with an extensive history of interactions between the parties in which the declaratory defendants expressly and repeatedly suggested historical and existing infringing activity by the declaratory plaintiff." *Id.* at 1247. No such threats of litigation have been articulated here. The single conversation recounted in Soni's declaration falls far short of the express and recurring conduct alleged in *Surefoot*. And while

Halo Lifestyle states generally that Halo Farm has an "aggressive and litigious" history against other parties, Pl. Mem at 16, it does not develop this allegation, let alone establish that Halo Farm has signaled an intent to behave comparably towards it.

Accordingly, the Court holds that it lacks subject matter jurisdiction to hear this lawsuit as there are inadequate allegations to demonstrate an actual case or controversy. The Court therefore has no occasion to reach Halo Farm's alternative requests that the Court, as a matter of discretion, decline to hear this case, or strike as overbroad the injunction relief sought by Halo Lifestyle.

## CONCLUSION

For the foregoing reasons, the Court finds that no actual case or controversy exists in this case to establish declaratory jurisdiction under the DJA. Accordingly, the Court grants Halo Farm's motion to dismiss, without prejudice. The Court respectfully requests that the Clerk of Court terminate the motion pending at Dkt. 19 and close this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: April 16, 2019
      New York, New York